# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **AMANDA FISHER,** | : | CIVIL ACTION NO.: |
| **Plaintiff,** | : | |
| vs. | : | |
| | : | |
| **NORWALK PUBLIC SCHOOLS** | : | |
| **Defendant.** | : | OCTOBER 28, 2020 |
| | : | |

# COMPLAINT

## I.  PRELIMINARY STATEMENT

1.  Plaintiff, Amanda Fisher ("Plaintiff" or "Fisher") brings claims against her employer, Norwalk Public Schools ("Defendant" or "NPS").  Fisher is a physical education and health teacher with NPS.  She has asthma.  As a result of her asthma, she is at "high risk" of suffering serious illness or death if she contracted COVID-19.  Therefore, she requested that she be permitted to teach remotely as an accommodation for her disability.  However, NPS refused to permit her to teach remotely.  In fact, in late August, 2020, the Defendant implemented a blanket "No Remote Teaching" policy which left individuals with certain medical conditions with a choice between risking their lives or being left with no income.  Defendant's actions violate Section 504 of the Federal Rehabilitations Act of 1973, 29 U.S.C. § 794 ("Section 504").

2.  Plaintiff requests a trial by jury on all issues triable to a jury.

## II.  JURISDICTION

3.  This Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1331.

### III. <u>VENUE</u>

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (2), venue is proper within the District because the Defendant is located in Connecticut and all of the conduct underlying Plaintiff's claims occurred in Connecticut.

### IV. <u>ADMINISTRATIVE PROCEDURES</u>

5. On October 28, 2020, the Plaintiff filed a dual claim with the Connecticut Commission on Human Rights and Opportunities ("CHRO") and the Equal Employment Opportunity Commission ("EEOC") alleging that NPS' refusal to provide her with the reasonable accommodation for her disability violated Title I of the Americans with Disabilities Act, 42 U.S.C. § 12201 et. seq. and the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. §46a-60(a)(1). The Plaintiff will amend this Complaint to add her CFEPA and ADA claims after she exhausts her administrative remedies

### V. <u>PARTIES</u>

6. Plaintiff, Amanda Fisher is a resident in Norwalk, CT and is a physical education and health teacher with the Defendant.

7. Defendant, Norwalk Public Schools, is a public entity located at 125 East Avenue, Norwalk, CT 06852-6001. The Defendant is a "federal Fund recipient," as defined by Section 504.

### VI. <u>FACTS</u>

8. Plaintiff has a Bachelor of Science degree in Physical Education from the State University of New York College at Brockport and a Master's Degree in Health Education from the State University of New York College at Cortland.

9. Plaintiff is certified to teach physical education in both New York and Connecticut and certified to teach health in Connecticut.

2

10. Plaintiff taught health and physical education at Chappaqua Central School District in New York from March, 2006 through February, 2008.

11. Plaintiff started working for NPS in March, 2008. She is responsible for planning, instructing and assessing students in grades K-5 in health and physical education at the Naramake Elementary School.

12. Throughout her tenure at NPS, she has consistently received performance reviews which described her performance as being "exemplary" or "proficient."

**Plaintiff has asthma.**

13. In 2018, Plaintiff was diagnosed with asthma. In 2019, she underwent sinus surgery to make breathing easier. However, due to many environmental triggers, her asthma has gotten worse. She uses a rescue inhaler every four hours as needed. She uses a daily maintenance inhaler, as well as nasal spray twice a day. She also gets shots for allergies.

14. Plaintiff's asthma substantially impairs her in the major life activity of breathing.

**COVID-19 Pandemic.**

15. The novel coronavirus, which is commonly known as COVID-19, is a severe respiratory virus first identified in Wuhan, China in December, 2019 and was declared a public health emergency of international concern in January, 2020. The first known case of COVID-19 in the United States was confirmed in Washington state in January, 2020.

16. COVID-19 is a severe, acute respiratory virus and may result in serious illness or death. It spreads primarily from person to person through respirator droplets when the infected person talks, coughs or sneezes. It can also be spread by human contact with surfaces contaminated with droplets of the virus.

17. On March 10, 2020, Connecticut Governor Ned Lamont issued a declaration of public health and civil preparedness emergency proclaiming a state of emergency throughout Connecticut due to the COVID-19 outbreak in the United States and Connecticut.

18. On March 11, 2020, the World Health Organization declared the COVID-19 outbreak a pandemic.

19. To reduce COVID-19's spread, the United States Centers for Disease Control and Prevention ("CDC") and the Connecticut Department of Public Health ("DPH") recommended implementing community mitigation strategies to slow transmission of COVID-19, including limiting the number of people permitted in gatherings and social distancing in smaller gatherings.

20. On March 13, 2020, President Donald J. Trump declared COVID-19 to be a national emergency.

**Governor Ned Lamont Closes Public Schools.**

21. On March 15, 2020 Governor Lamont issued an Executive Order cancelling classes at all public schools effective March 17 through March 31.

22. After twice extending the deadline to close public schools, Governor Lamont eventually issued an Executive Order closing public schools for the remainder of the academic year ending in June, 2020.

23. During the time period from March-June, 2020, public schools continued providing instruction but did so remotely.

24. During the period from March 17-June 9, 2020, Plaintiff continued to teach K-5 students physical education and health.

25. Plaintiff taught her 4th and 5th grade students on the on-line platform Google Classroom. Lessons were uploaded and included workout videos for fitness, dance and health.

Lessons included a warm-up and cool-down.  Plaintiff attended a variety of classroom meetings on the online platform Zoom.  She was also able to speak in Google Classroom with students.  She regularly communicated with classroom teachers and her two school principals.

26. NPS had decided to send K-3 students home paper packets.  Plaintiff attended live zoom meetings and taught yoga to some of her classes.  She was in charge of planning all of the 2nd and 3rd grade lessons for the District.  Her lessons included a warm-up, review, an introduction to a new activity, a cool down and review questions.  The topics in the remote classes included yoga, fitness, bicycle safety, swimming safety, nutrition, hydration and the importance of sleep.

**Fisher Requests Remote Teaching As An Accommodation For Her Disability For the 2020-21 School Year**

27. On June 25, 2020, Governor Lamont announced plans for the 2020-21 school year amid the on-going COVID-19 pandemic.  Governor Lamont stated in his announcement that "[a]s Connecticut schools plan to reopen, the guidance and consideration in this framework are grounded in six guiding principles."  The first principle was "safeguarding the health and safety of students and staff."

28. Vesenia Cuevas is a Human Resources Business Partner and is responsible for NPS' Central Office and Elementary Schools.  On July 23, 2020, Plaintiff sent a request to her requesting that Plaintiff be permitted to teach remotely as an accommodation due to her increased risk of serious illness or death if she contracted COVID-19.

29. In further support for her request for an accommodation, Plaintiff provided a letter from her physician, Paul R. Kelly, M.D., dated July 23, 2020 stating that "she is unable to use any face covering due to her asthma.  The face mask causes asthma flares and difficulty in breathing.

5

Due to detrimental effects of the face mask, we would request that you modify and accommodate her work space accordingly, which may require remote work access."

**NPS Refuses To Let Fisher Teach Remotely.**

30.     On August 20, 2020, Donna Rastocky, the Human Resources Benefits Specialist at NPS, stated in a letter to Plaintiff that  (1) "In response to your request for a remote teaching position during the 2020-2021 school year, please be aware that the district does not currently have remote only teaching positions," and (2) "[w]hen schools reopen on September 8, 2020, our district reopening plan requires that all teachers will engage in synchronous instruction in the classroom every day including virtual students.  Therefore, all staff will be teaching from their respective work location(s)."

31.     On August 21, 2020, Ms. Rastocky asked Plaintiff in an email if she could wear a face shield rather than a face mask.

32.     Plaintiff provided Ms. Rastocky a letter from her physician, Dr. Kelly, dated August 24, 2020 that "she is unable to use any face coverings due to her asthma.  The face coverings cause asthma and difficulty breathing.  Due to the detrimental effects of the face coverings, we would request that you modify and accommodate her work space accordingly which would require remote work access."

33.     Ms. Rastocky sent Plaintiff a letter dated August 26, 2020, refusing her request for a remote teaching position, stating that "[o]n August 25, 2020 a letter was sent stating that there were no virtual teaching positions."  She added "with regards to your accommodations request, and with consideration given to your essential job functions and our operational necessities, the accommodation we are offering is a one-year, unpaid, special extended leave in line with your collective bargaining agreement contract."

34. On August 28, 2020, Plaintiff again requested an accommodation, which included teaching remotely, that would have enabled her to return to her position.

35. NPS opened the 2020-2021 academic year on September 8, 2020. Because NPS would not permit Plaintiff to teach unless she wore a face covering and she was not able to wear a face covering due to her asthma, she was not able to return to school. Nevertheless, Plaintiff continued to seek a reasonable accommodation that would have enabled her to return to school.

36. On September 15, 2020 the principal of Naramake Elementary School, Jane Wilkins, sent Plaintiff the NPS "Reopening Protocols for In-Person Learning P.E. Health and Safety" ("Reopening Protocol"). The cover page of the eight-page document added "An in-person learning model during minimal COVID-19 community spread with the option for blended learning and on-line only."

37. Among other things, the Reopening Protocol stated that:

- "[m]asks should be worn by staff and students upon entering and leaving the gym or other class facility and when not able to social distance,"

- "Consult with school nurse on proper protocol for students with asthma or other underlying conditions which may prohibit them from wearing face coverings,"

- "Masks should not be worn when engaging in moderate to high intensity physical activity. 12 feet of social distancing should be maintained while engaging in physical activity and exercises."

38. The Reopening Protocol provided that "[t]eachers should have a google classroom for remote learners to access."

39. Throughout September and early October, 2020, Plaintiff notified NPS daily that she would not be able to go to work. Nevertheless, she continued to draft and submit her daily

lesson plans for her classes. Her plans were administered to students through an intern, para-professional or substitute teacher. She was no longer required to submit daily lesson plans after she went on FMLA leave.

40. Because Plaintiff could not teach due to the NPS' refusal to permit her to teach remotely, she had to utilize her sick time which Plaintiff had accrued but not used over the course of her 12-13 years teaching at NPS.

41. Because NPS had still not given Plaintiff a definitive response to her accommodation request she made six weeks earlier, Plaintiff applied for FMLA leave on October 3, 2020. On October 7th, NPS notified Plaintiff that her request was granted retroactively to September 8 and through November 30, 2020. After her FMLA leave was approved, Plaintiff was no longer required to submit daily lesson plans.

42. On October 13, 2020, NPS Assistant Chief Talent Officer and Director of Labor Relations, Christopher J. Sugar, Esq., sent a letter to Plaintiff's attorney stating that the District could not accommodate her request to teach remotely because "it would create an undue hardship." Attorney Sugar added that:

> As you may be aware, there is currently a substitute staffing shortage throughout Connecticut and Norwalk is not immune from this lack of available substitutes. To have your client work remotely would mean Norwalk would have to find a substitute and/or pull another teacher or member of staff to cover her class in order to provide the students, who are in person with proper structure and supervision that a teacher is expected to provide as part of their essential duties.

43. For the time period from September 8, 2020 through October 7, 2020, NPS was using an intern or para-professional in Plaintiff's classes. That person was implementing the class lesson plans that she had been submitting daily.

**COVID-19 Cases Continue to Spike In the U.S., Connecticut, Norwalk and Norwalk Public Schools.**

44. As of October 25, 2020, approximately 8.78 million Americans have contracted COVID-19. Over 226,000 of those Americans have died of COVID-19. https:/www.cornoavirus.jhu.edu.html. Last Accessed Oct. 27, 2020.

45. Approximately 10% of the people who have had COVID-19 experience prolonged symptoms weeks or months after contracting COVID-19. These individuals, known as "long haulers," continue to suffer from a wide variety of symptoms such as severe fatigue, shortness of breath, joint pain, chest pain, difficulty concentrating, "brain fog" and impaired memory. https:/www.jamanetwork.com/as-their-numbers-grow-COVID-19-Long-Haulers-Stump-Experts.html.

46. As of October 27, 2020, 68,099 Connecticut residents have contracted COVID-19; 4,589 of the individuals have died. https:/www.coronavirus. jhu.edu.html. Last accessed Oct. 27, 2020.

47. The City of Norwalk has experienced a high number of COVID-19 cases as compared to other cities and towns in Connecticut. As of October 25, 2020, the total number of reported COVID-19 was 2,871 with 149 deaths. https:/www.Norwalkct.org.html, Last visited Oct. 27, 2020. On October 22, 2020, the Connecticut Department of Public Heath notified Norwalk that it was one of 19 communities in the state to be placed in the "red alert" category, which reflects the highest level of risk. "Norwalk Reaches COVID-19 Red Alert Level Per State DPH," https:/www.norwalkct.org.html. Last visited October 27, 2020. Norwalk implemented most of the DPH's recommendations for "red alert" communities, including encouraging "high risk" individuals to stay home. Id.

48. During the approximately seven-week period between the fall semester opening at NPS on September 8, 2020 through October 26, 2020, NPS had 79 persons confirmed positive COVID-19 cases, 1,345 persons in quarantine and 30 of its schools impacted. https://www.norwalkps.org.

49. Due to the spike in COVID-19 cases within the Norwalk School District, Superintendent Alexandra Estrella is considering switching to fully remote learning for all students in grades 6-12. Nevertheless, teachers and staff would still be required to report to the school buildings for instruction. https://www.norwalkct.org.html. Also, Kendell Elementary School and Silvermine Dual Language School switched to fully remote learning on Monday, October 26 due to the rise in COVID-19 cases.

**Persons With Certain Medical Conditions Have An Increased Risk of Serious Illness or Death If They Contract COVID-19.**

50. COVID-19 can infect any person. However, the Centers for Disease Control and Prevention ("CDC") has recognized that persons with certain underlying medical conditions have an increased risk of serious illness or death if they contract COVID-19. https://www.cdc.gov/coronavirus/2019/people-with-certain-medical-conditions.html.

51. According to the CDC, persons with certain medical conditions were hospitalized six times as often and died 12 times as often as otherwise healthy individuals. Lena Sun, "Patients With Underlying Conditions Are 12 Times As Likely to Die of COVID-19 as Otherwise Health Individuals," Washington Post (June 15, 2020).

52. According to the CDC, having moderate-to-severe asthma may increase the person's risk for severe illness from COVID-19. https://www.cdc.gov/coronavirus/2019-people-with-certain-medicalconditions.html.

53. The Equal Employment Opportunity Commission ("EEOC") has stated in its COVID-19 guidance that persons with certain impairments are at a greater risk from COVID-19 and, as a result, may be entitled to a reasonable accommodation.

**Fisher Was Able To Perform the Essential Functions of Her Job With or Without An Accommodation.**

54. The Americans with Disabilities Act ("ADA") provides that an individual must be "qualified" to perform a position. A person is "qualified" if they can perform the "essential functions" of her position, with or without a reasonable accommodation. 42 U.S.C. § 12111(8).

55. The term "essential functions" means the fundamental duties of the job that the individual holds or desires. 29 C.F.R. § 1630.2(n)(1). The EEOC lists factors that should be considered when determining what job functions are "essential." One of the factors that should be considered is a written job description. 29 C.F.R. § 1630.2(n)(3)(ii).

56. The job description for Plaintiff's position lists 19 responsibilities. Plaintiff would have been able to meet all of these responsibilities while working remotely.

57. To the extent that Plaintiff would have needed assistance "on ground" with the students, she would have been able to do so if NPS had provided a teacher's aide, intern or para-professional when teaching physical education and health classes.

58. School districts might be required to provide a disabled teacher a teacher's aide or para-professional as a reasonable accommodation to assist with classroom management. Borkowski v. Valley Central School District, 63 F. 3d 131, 140-41 (2d Cir. 1995).

59. During the fall semester of the 2020-2021 academic year, many public school districts throughout Connecticut have accommodated teachers with certain medical conditions that

place them at "high risk" by permitting them to teach remotely. That includes physical education teachers in comparably sized cities in Connecticut to Norwalk like Waterbury and Stamford.

60. Waterbury Public Schools are teaching some of their physical education classes remotely. Physical education teachers were provided professional development training to help design remote teaching modules. For example, they have used Goggle slides to create videos and visual guides.

61. Stamford Public Schools are also teaching some physical education classes remotely through their Distance Teaching and Learning Academy.

62. Section 504 may require employers to modify its employment policies as an accommodation for a person with a disability.

## VII. LEGAL CLAIMS

### COUNT ONE – SECTION 504

Paragraphs 1-62 of this Complaint are incorporated by reference the same as if fully pleaded.

63. The Plaintiff is substantially limited in one or more major life activities and, therefore, has a "disability" as defined by Section 504.

64. At all relevant times, the Plaintiff was qualified to perform the essential functions of her position, with or without a reasonable accommodation.

65. The Defendant violated Section 504 by refusing to permit the Plaintiff to teach remotely as an accommodation for her disability.

66. As a result of the Defendant's violation of Section 504, the Plaintiff suffered a loss of wages and emotional distress.

## VIII. PRAYER FOR RELIEF

WHEREFORE, after due proceedings are had, Plaintiff requests by way of relief against Defendants:

    a.    Order the Defendant to provide Fisher with a reasonable accommodation;

    b.    An award of damages for past and future lost income and benefits due to Plaintiff;

    b.    An award of damages for emotional distress due to Plaintiff;

    c.    An award of reasonable attorney's fees and costs;

    d.    An award of such other and further relief as may be allowed by law or equity which the Court deems just and proper.

              **SUBMITTED,**
              AMANDA FISHER

By: /s/ Gary Phelan
    Gary Phelan (ct03670)
    Mitchell & Sheahan, P.C.
    999 Oronoque Lane,
    Suite 203
    Stratford, CT 06614
    Tel.: 203-873-0240
    Fax: 203-873-0235
    Email: gphelan@mitchellandsheahan.com

    Her Attorney

## **CERTIFICATION OF SERVICE**

I hereby certify that on January 27, 2020, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF system.

Cindy M. Cieslak
Robin B. Kallor
Rose Kallor LLP
750 Main Street, Suite 1108-3
Hartford, CT 06103

                                      THE PLAINTIFF

                                      By: /s/ Gary Phelan
                                           Gary Phelan (ct03670)
                                           Mitchell & Sheahan, P.C.
                                           80 Ferry Blvd., Suite 216
                                           Stratford, CT 06615
                                           Tel.: 203-873-0240
                                           Fax: 203-873-0235
                                           Email: gphelan@mitchellandsheahan.com